ON MOTION FOR REHEARING

PARIENTE, Judge.
We deny the Unemployment Appeals Commission’s Motion for Rehearing, but withdraw our previous opinion and substitute the following opinion.
Appellee, Unemployment Appeals Commission (UAC), denied appellant, Michael E. May (claimant), unemployment compensation benefits because he worked an insufficient number of weeks during the period used to calculate entitlement. The issue raised in this appeal is whether accumulated annual leave and sick leave should be included for the purpose of calculating unemployment benefits where those monies were paid during a time that the employee was employed but not performing services for the employer. We answer in the affirmative, reverse the UAC’s determination to the contrary, but remand for a factual determination as to when claimant’s employment terminated.
Claimant performed services as a corrections officer for the Florida Department of Corrections (DOC) from December 1985 until December 1993, when he suffered a heart attack on the job. He did not perform any further services for the DOC after suffering the heart attack, but did attend the DOC’s recertification class held in July 1994. From December 1993 until October 1994, claimant continued to receive full wages from his employer by utilizing his accumulated annual leave and sick leave. When, subsequent to October 1994, his physician pronounced him able to return to restricted work, his employer told him that no restricted positions were available.
Claimant applied for unemployment compensation in March 1995. He initially received benefits based on a wage transcript that showed a base period of October 1,1993 through September 30, 1994. As a result of further investigation, claimant was notified that because he had performed no services for his employer after December 1993, he had an insufficient number of weeks worked to render him eligible for unemployment benefits.
In order to be eligible for unemployment benefits, a claimant must have received at least 20 weeks of earnings from insured work during the relevant base period. See § 443.091, Fla. Stat. (1995).[1] Because the claimant’s wages in 1994 were based on accrued annual leave and sick leave payments, and not on services performed, the UAC upheld the referee’s refusal to credit the claimant with any weeks of work for the first three quarters of 1994 and credited him with only 12 weeks of work for the last quarter of 1993.[2]
Section 443.091 sets forth benefit eligibility conditions, with subsection 443.091(l)(f) containing the eligibility requirement at issue in this case. An employee must have “been paid wages for insured work equal to 20 times his average weekly wages during his base period.” Id. Subsection 443.111(2)(b) provides that the award of benefits for entitled individuals shall be computed by dividing the total base period wages by the number of weeks he was paid wages for insured work. “Insured work” is defined as “employment for employers.” § 443.036(25). The statute broadly defines “employment” as “any service performed by an employee for the person employing him.” § 443.036(19).
UAC interprets these sections to mean that for wages to qualify as wages for insured work during the base period, the services for which those wages are earned must be performed during the base period. UAC *354 asserts that there were no services performed, and thus no employment wages or weeks worked in the last three quarters of claimant’s base period, because the monies collected in 1994 represented accrued annual leave and sick leave, not wages for services rendered during those quarters.
Claimant concedes that he performed no services in 1994, but counters that the statutory definition of employment does not state that the services must be performed during the particular week that wages are paid. Claimant argues that because he performed services for the employer while he was accruing annual and sick leave, the accrued annual and sick leave payments that he received during 1994 should qualify as wages for insured work, for which he is entitled to credit for wages and weeks worked.
Support for claimant’s position can be found in the statutory definition of “wages.” “Wages” are defined as “all remuneration from employment.” § 443.036(33)(a). Subsection 443.036(33)(b) sets forth what the term “wages” does not include. Subsection 443.036(33)(b)3 excludes the amount of any payment on account of sickness or accident disability made by the employing unit “after the expiration of 6 calendar months following the last calendar month in which the individual performed services for such employing unit.” Because neither side has addressed the applicability of subsection 443.036(33)(b)3, we assume that this subsection does not apply to exclude earned or accrued sick leave from the term “wages.”
Even if this subsection did apply to earned sick leave, the subsection allows the first six months of payments on account of sickness or accident disability to be included within the term “wages.” The statute is silent not. only as to earned sick leave, but also as to whether earned annual leave is excluded from the definition of wages. The non-exclusive definition of wages, which is not tied into performing services, supports claimant’s view that earned sick leave, at least for the first six months of payments, and earned annual leave fits within the statutory definition of “wages” and should be included in calculating benefit eligibility.
In Coates v. Unemployment Compensation Board of Review, 676 A.2d 742, 746 (Pa.Commw.Ct.1996), the Pennsylvania appellate court, in interpreting a statute similar to Florida’s, noted that the claimant’s annual and sick leave “to which Claimant was entitled while he was on ‘leave’ status accrued to Claimant in direct relation to the personal services rendered with respect to his employment. Therefore, ... this payment is not excluded as a matter of law from the calculation of Claimant’s base year wages; rather, these payments are properly considered Vages.’ ”
Further support for claimant’s position can be found within the statutory definition of unemployment. “Unemployment” is defined as “any week during which [an employee] performs no services and with respect to which no earned income is payable to him.” § 443.036(32) (emphasis supplied).
In Matteson v. Unemployment Appeals Commission, 580 So.2d 826 (Fla. 5th DCA 1991), the claimant had been discharged and, subsequent to discharge, received accumulated vacation and sick pay and wages in lieu of notice. Id. Matteson relied on the statutory definition of unemployment, as claimant does here, to support his position. Matteson argued that because he received annual leave payments he did not meet part of the statutory definition of “unemployment.” Thus, the argument followed, if an individual could not qualify as being unemployed, that individual must be employed.
The fifth district construed the statutory definition of unemployment to mean that employment continues so long as the employee performs services or is receiving accrued annual or sick leave during employment. Id. at 828. It rejected the more expansive definition urged by Matteson, which would have made employment coextensive with the period he received deferred payments. Id. Because it was undisputed that Matteson was discharged from employment before receiving deferred payments, the fifth district in Matteson did not confront the question of whether the payments of earned sick or annual leave would qualify if received during the time the employee was still employed by *355 the employer, even if no longer performing services.
Claimant distinguishes this case from Matteson by arguing that he remained employed while receiving his accrued annual and sick leave payments and that his employment continued until he was told that his employer could not accommodate his medically-related work restrictions. The problem with claimant’s contention is that there has been no factual determination as to his date of termination. This omission may have resulted from the fact that the UAC’s position has consistently been that annual leave and sick leave benefits paid as wages cannot be considered as credits when the employee is not performing services — regardless of whether the employee remained employed.
Claimant concedes in his brief that records in evidence indicate an employment end date of December 1993, the month of his heart attack. However, the record also contains information consistent with claimant’s position, including his doctor’s letter from January 1995, which states that claimant is “currently employed at the South Florida Reception Center of the Dept, of Corrections.” Simply because claimant did not perform services after December 1993 does not mean that his employment automatically ceased. In fact, the appeals referee found that “[o]n July 18 and 19, the claimant attended classes designed to prepare the claimant for recertification as a correctional officer. These are classes operated by the employer. The claimant was notified of the classes through the employer.”
Because the essential factual determination as to the date of claimant’s termination was not made, we cannot affirm the decision of the appeals referee. We remand this case to the referee for a determination of when claimant’s employment with the DOC terminated. If the referee finds that employment continued after December 1993, then the referee should award wages and weeks worked for that period of time. If this calculation provides the claimant with sufficient wages and weeks worked to be eligible for unemployment, then claimant should be awarded unemployment compensation consistent with an amended calculation. If the referee finds that employment terminated in December 1993, then the previous denial of benefits must be upheld. Claimant would then receive no unemployment compensation benefits and would be compelled to refund the amount claimed by the UAC.
REVERSED AND REMANDED.
GUNTHER, J., concurs.
STONE, C.J., dissents with opinion.

. The 1996 amendments to the Florida Statutes substantially revise the benefit determination analysis. Neither party argues that these amendments apply to our case. According to statute, these amendments became effective on July 1, 1996. See § 443.111, Fla. Stat. (Supp.1996).

. The "base period” is the one-year period consisting of the first four of the last five complete calendar quarters immediately preceding the filing of the claim. See § 443.036(5), (6), Fla. Stat. (1995). In this case, claimant’s base period consisted of the last quarter of 1993 and the first three quarters of 1994.